UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, Plaintiff, | § § § § | |
| v. | § § | CIVIL ACTION NO. H-09-1032 |
| C.R.E.S. MANAGEMENT, L.L.C., Defendant. | § § § | |

## **MEMORANDUM AND ORDER**

Pending before the Court is Defendant/Counter Claimant C.R.E.S. Management, LLC's ("CRES") Motion for Partial Summary Judgment [Doc. # 24] ("the Motion"). Plaintiff/Counter Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") filed a response [Doc. # 24], CRES replied [Doc. # 29], and Philadelphia filed a sur-reply [Doc. # 39]. The Motion is ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted in part** and **denied in part.**

I.      **FACTUAL BACKGROUND**

This is an insurance coverage and claims-handling dispute. CRES is a property management company that manages five Houston-area properties insured by

Philadelphia.[1]  On September 13, 2009, each of the five properties was damaged by Hurricane Ike.  CRES filed claims with Philadelphia for all five properties.  After failing to reach a settlement with CRES over the amounts properly covered under the insurance policies, Philadelphia filed this declaratory judgment action on April 6, 2009.  CRES filed counterclaims seeking full coverage for its claims.  CRES also claims Philadelphia breached its duty of good faith and fair dealing, and committed violations of the Texas Insurance Code, TEX. INS. CODE § 541.001 *et seq.* & TEX. INS. CODE § 542.051 *et seq.*, and the Texas Deceptive Trade Practices Act.  TEX. BUS. & COM. CODE § 17.46 *et seq.*

Although CRES's sprawling briefing on its Motion for Partial Summary Judgment asserts many grievances with Philadelphia's claims-handling, the only issue presented by the Motion that remains in dispute is whether Philadelphia violated the prompt payment requirements of Chapter 542 of the Texas Insurance Code by failing to timely pay two claims related to one of the five Philadelphia-insured properties.[2] Specifically, CRES claims that it is entitled to statutory interest and attorney's fees for

---

[1]  The properties are Fountains of Westchase, 3525 Sage, Towers of Clear Lake, Nantucket Square, and Briar Park.  Though the properties are all managed by CRES, each has a different legal owner.

[2]  In its Motion, CRES also sought payment for undisputed amounts of business income losses for the Towers of Clear Lake ("Towers").  However, CRES concedes that these amounts have now been paid.  Thus, CRES's claim for payment of undisputed amounts of business income losses at Towers is **denied as moot**.

the delay in payment of claims for carport repairs and business income losses at the Towers of Clear Lake ("Towers").  Philadelphia argues that the statutory penalty should not be applied under the circumstances in this case.

The following factual background is not in dispute.  On March 3, 2009, CRES submitted claim documentation to Philadelphia for $331,515.00 in carport repairs for the Towers property.  The undisputed portion of this carport repair claim is $131,034.55.  Philadelphia did not issue payment specifically for this claim until October 8, 2009, 144 days after the expiration of the statutory 75-day deadline.  On January 19, 2009, CRES submitted claim documentation for lost business income at Towers covering the period between September 2008 and December 2008.  The undisputed portion of this lost business income claim is $31,590.96.  Philadelphia also failed to issue payment specifically for this claim until October 8, 2009, 187 days after the statutory 75-day deadline.

## II.    **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.

1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

Where the movant bears the burden of proof at trial on the issues at hand, as is the case here, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response.  *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts that show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

### III. ANALYSIS

#### A. Prompt Payment Statute

Chapter 542 of the Texas Insurance Code imposes various deadlines on insurers for handling and paying claims submitted by an insured under an insurance policy. *See* TEX. INS. CODE § 542.051-542.061. The provision at issue here requires an insurer to pay an insured's claim within 60 days after receiving all requested proof from the insured. *Id.* § 542.058(a); *e.g.*, *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997). In the event of a weather-related catastrophe, as defined by the Texas Commissioner of Insurance, the period is extended to 75 days. *Id.* § 542.059(b). The Commissioner declared Hurricane Ike to be a weather-related catastrophe for purposes of § 542.059(b), thus invoking the 75-day deadline. *See* TEX. DEP'T. OF INSURANCE, COMMISSIONER'S BULLETIN #B-0066-08 (2009). An insurer

that fails to pay a claim within the statutory period is liable for a statutory penalty of 18% interest per annum plus attorney's fees. *See* TEX. INS. CODE § 542.060(a),(b); *Higginbotham*, 103 F.3d at 461.

To successfully maintain a claim for violation of a deadline imposed under Chapter 542, an insured must show (1) a claim under an insurance policy, (2) that the insurer is liable for the claim, and (3) that the insurer has failed to comply with one or more requirements of Chapter 542. *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001). If the insurer is not liable for a claim, a Plaintiff is not entitled to the statutory penalty for late payment even if the insurer failed to comply with statutory deadlines. *See* TEX. INS. CODE § 542.060(a); *id.* § 542.058(b); *Bonner*, 51 S.W.3d at 291-92.

### B. Philadelphia's Liability for Late Payment

CRES contends that it is entitled to statutory interest and attorney's fees as a matter of law because Philadelphia did not pay either the carport or lost business income claims for the Towers property until after the expiration of the 75-day periods for payment. Philadelphia does not dispute that CRES filed claims under an insurance policy, that Philadelphia is liable for at least a portion of those claims, and that Philadelphia paid CRES's carport and business income loss claims for the Towers property after the expiration of the relevant statutory deadlines. Instead, Philadelphia

argues that given the magnitude of CRES's claims, and Philadelphia's professed diligence in investigating them, the award of statutory interest is inappropriate in this case. Philadelphia points out that CRES's claims totaled nearly $8 million in damages to five separate multi-family developments, each containing several hundred units. The insurer states that upon receiving CRES's claims, it immediately acknowledged receipt and began its investigation, dedicating "countless hours and resources to the adjustment of these claims, including the use of multiple third-party adjusters, engineers, estimators, and accountants over a period of approximately one year."[3] Philadelphia further states that it made every effort to keep CRES informed of the process, and that it never denied the claims or abandoned its investigation. Once the undisputed losses were determined, full payment was made to CRES immediately, Philadelphia contends.

Philadelphia has not raised a defense recognized under Texas law in response to CRES's prompt payment claim. The plain language of the statute requires an insurer to pay a claim within 60 days, or 75 days in the case of a weather-related catastrophe, after the insured has submitted all requested proof. *See* TEX. INS. CODE §§ 542.058(a), 542.059(b); *Higginbotham*, 103 F.3d at 461. Significantly, Philadelphia does not allege or provide specific proof that CRES, in submitting its

---

[3] Philadelphia Indemnity Insurance Company's Memorandum in Response to C.R.E.S. Management L.L.C.'s Motion for Partial Summary Judgment [Doc. # 29], at 6.

claims documentation, failed to provide all information that Philadelphia actually requested. *See id.* § 542.058 (commencing the statutory deadline upon receipt of all "items, statements, and forms reasonably requested" of the insured); *id.* § 542.055(a)(3), (b) (requiring the insurer to, not later than the fifteenth day after receiving notice of a claim, "request from the claimant all items, statements and forms that the insurer reasonably believes, at that time, will be required of the claimant," and allowing an insurer to make additional requests for information during the investigation, if necessary); *cf. Lias v. State Farm Mutual Auto. Ins. Co.*, 45 S.W.3d 330, 336-37 (Tex.App.—Dallas 2001, no pet.) (denying statutory interest for delayed payment when an insurer paid a claim nearly eight months after first receiving notice of the claim, but payment was within 60 days of the insurer receiving all necessary information from the insured).

Philadelphia also does not demonstrate it invoked the 45-day extension available to insurers who are unable to accept or reject a claim within fifteen days of receiving all necessary proof from the insured. *See* TEX. INS. CODE § 542.056(d). To avail itself of this extension, Philadelphia must show that, within the fifteen-day period, it notified CRES of the reasons it needed additional time. *See id.* While Philadelphia states that it made "every effort" to keep CRES informed of its investigation, Philadelphia does not make, and the record does not support, any

allegation that it informed CRES of the reasons it needed additional time to either reject or accept its claims pursuant to the 45-day statutory extension.

Essentially, Philadelphia argues it acted in "good faith" in trying to adjust the large, complex CRES claims, including those pertaining to the Towers. This Court does not write the Texas statutes and may not create new Texas law. There is no authority cited by Philadelphia, and the Court's own research reveals none, that establishes that an insurer's good faith handling of a claim, *per se*, is a viable legal defense to the deadlines imposed to the prompt payment provisions of the Texas Insurance Code. Indeed, the reported decisions hold that good faith is *not* a defense. *See*, *e.g.*, *Higginbotham*, 103 F.3d at 461 (5th Cir. 1997) (imposing statutory interest for delayed payment when an insurer denied a claim despite the fact that the insurer acted in good faith). In sum, Philadelphia has not raised a valid defense for its failure to pay the Towers carport and lost business income claims within 75 days of receiving claim documentation from CRES. Accordingly, Philadelphia is liable for statutory interest and attorney's fees for both claims. *See* TEX. INS. CODE § 542.060.

### C.   Calculation of Statutory Interest

The statutory penalty for delayed payment of a claim applies only to sums for which an insure is liable. *See* TEX. INS. CODE § 542.060(a); *id.* § 542.058(b); *Bonner*, 51 S.W.3d at 291-92. This Motion for prompt payment penalties was filed prior to

any coverage rulings. The Court assesses interest therefore on only those portions of the carport and lost business income claims that are undisputed, *i.e.*, those portions for which Philadelphia has admitted liability. The undisputed portion of the carport claim is $131,034.55. The undisputed portion of the lost business income claim for September to December 2008 is $31,590.96. The statutory interest penalty will be assessed based on these amounts.[4]

Both parties agree that, if statutory interest is to be assessed, it should accrue beginning on the date that payment became late, *i.e.*, the 76th day after claim documentation was filed for each claim. Accordingly, interest will be assessed for the carport claim beginning on May 18, 2009. Interest will be assessed on the business income losses claim beginning on April 5, 2009.

---

[4] CRES submitted claims totaling $168,064.39 for lost business income at Towers through July 2009. The undisputed portion of these claims is $128,709.77. However, the undisputed portion of the claim CRES submitted for September to December 2008, the claim at issue here, is $31,590.96. CRES argues that Philadelphia has failed to provide an explanation or documentation of how it arrived at $31,590.96 for the months of September to December 2008 and is therefore not entitled to use of this smaller figure for the calculation of statutory interest. Philadelphia's failure to provide more details on its valuation of CRES's lost business income claim also forms the basis of a Motion to Compel filed by CRES. *See* [Doc. # 34]. The Court does not reach the adequacy of Philadelphia's disclosures at this time, but reiterates that statutory interest for late payment of a claim may only be assessed for claims on which the insurer is actually liable. Accordingly, at *this* stage, prior to any decisions on disputed coverage issues, the Court considers only the undisputed portions of CRES's claims. To the extent that Philadelphia is found liable for additional sums later, CRES may seek statutory interest on those amounts as appropriate.

The parties also agree that interest should accrue until the day that the claims were paid. The record shows that Philadelphia issued payment specifically for CRES's claims for carport damages and lost business income at the Towers property on October 8, 2009. The record also shows, however, that Philadelphia previously had issued an advance to CRES of $350,000 in December 2008. This advance originally was issued for a different CRES-managed property, Briar Park. Subsequently, in February 2009, the parties reached a settlement for that property, and Philadelphia instructed CRES to apply the advance to yet another CRES-managed property, 3525 Sage ("Sage"). However, when Philadelphia issued its coverage decision for all properties on September 15, 2009, it determined that the covered loss on the Sage property was only $133,513.69, and applied the difference between this amount and the $350,000 advance to the Towers property claims.

CRES complained to Philadelphia that it should be allowed to use the full $350,000 on the Sage property and that the shifting of the balance of the advance to a third property was inappropriate. Philadelphia responded by issuing a separate payment for the full amount of the undisputed portion of the Towers property claims on October 8, 2009, as noted above. CRES argues that the unilateral shifting of the $350,000 property was an unfair insurance practice. Philadelphia responds that, at the time it advanced the payment to the Sage property, it was not in a position to

accurately assess the amounts of the covered losses there, and that the separate payment for the full amount of the undisputed Towers damages has resulted in an overpayment of the Sage losses of $216,486.31.

The Court does not decide at this juncture the propriety of the shifted payment, Philadelphia's coverage decisions, or the alleged overpayment. However, taken in a light most favorable to Philadelphia, the non-movant, this evidence raises a genuine issue of material fact about when Philadelphia provided payment to CRES for the Towers carport and business income loss claims. There is a fact issue about whether Philadelphia's decision to apply portions of the advance to the Towers property was justified under the circumstances. If justified, CRES will be deemed to have received payment, or partial payment, on the date, if any, that it received notice that it was to use a portion of that advance for the Towers damages. Summary judgment on the issue of when CRES received payment is denied.

## IV.  CONCLUSION

The Court accordingly concludes that Philadelphia is liable for delayed payment pursuant to Chapter 542 of the Texas Insurance Code for both CRES's carport repairs and lost business income claims for the Towers property. Philadelphia is liable for both statutory interest and attorney's fees. Statutory interest at the rate of 18% per annum will apply to the undisputed amounts of $131,034.55 for the carport claim and

$31,590.06 for the lost business income claim. Interest will be assessed for the period commencing on May 18, 2009 for the carport claim, and April 5, 2009 for the lost business income claim through the date of payment of the claims respectively. The date of payment of these claims remains in genuine dispute and thus the total amount of interest cannot be determined at this juncture. It is therefore **ORDERED** that CRES's Motion for Partial Summary Judgment [Doc. # 24] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that this case remains set for a hearing on CRES's Motion to Compel Philadelphia Indemnity Insurance Company's Compliance with Docket Control/Scheduling Order [Doc. # 34] on **December 18, 2009**, at **2:00 p.m.**

SIGNED at Houston, Texas, this **15th** day of **December, 2009**.

Nancy F. Atlas
United States District Judge