# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-01032 |
| | § | |
| C.R.E.S. MANAGEMENT, L.L.C. | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this insurance coverage dispute, Defendant C.R.E.S. Management, L.L.C.,

("CRES") has filed two motions for partial summary judgment: a Motion for Partial

Summary Judgment [Doc. # 100] on its claim regarding the property at Fountains of

Westchase ("Fountains Motion"), to which Plaintiff Philadelphia Indemnity Insurance

Company ("Philadelphia") has responded and CRES has replied;[1] and a Motion for

Partial Summary Judgment [Doc. # 101] on its claim regarding the property at the

Towers of Clear Lake property ("Towers Motion"), to which Philadelphia has

responded and CRES has replied.[2]  The motions are now ripe for decision.  Having

considered the parties' briefing, the applicable legal authorities, and all matters of

---

[1]      *See* Docs. # 108, # 110.

[2]      *See* Docs. # 109, # 111.

record, the Court concludes that the Fountains Motion should be **granted in part and denied in part** and the Towers Motion should be **granted in part**.

## I.    BACKGROUND

This is an insurance coverage and claims-handling dispute.  Defendant CRES was the property manager for five residential properties in Houston that were damaged by Hurricane Ike on September 13, 2008, including Fountains of Westchase (owned by ELP Simon, Ltd.) and the Towers of Clear Lake (owned by Towers CL, Ltd.).[3] CRES had purchased Commercial Property Insurance Policy No. PHPK307328 ("Policy") from Philadelphia to protect the properties from risk, including hurricane damage.[4]  The Policy was in effect from April 30, 2008, to April 30, 2009, and insured both CRES and the property owners.[5]

After Hurricane Ike damaged the properties managed by CRES, CRES filed multiple claims with Philadelphia.  On April 6, 2009, Philadelphia initiated this action, seeking a declaratory judgment that it does not owe coverage for certain claims filed by CRES.  CRES brought counterclaims, arguing that Philadelphia has failed to pay or has delayed payment on valid claims under the Policy.  CRES's counterclaims

---

[3]    Affidavit of Teresa Lippert, CEO of CRES (Exhibit A to Towers Motion), at 1, ¶ 1.

[4]    Philadelphia Indemnity Insurance Company Commercial Lines Policy No. PHPK307328 (Exhibit B to Towers Motion).

[5]    *See id.*, Named Insured Schedule, at 2 (listing, *inter alia*, ELP Simon, LP and Towers CL, Ltd.).

include claims for penalty interest and fees under the Texas Prompt Payment of Claims Act  ("TPPCA"),[6] which are at issue in the current motions.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[7]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[9]  The moving party, however, need not negate the elements of the

---

[6]   TEX. INS. CODE §§ 542.051-542.061.

[7]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[8]   FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[9]   *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

non-movant's case.[10]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[11]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[12]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[14]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[15]  The non-movant's burden is not met by mere reliance on the allegations or

---

[10]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[11]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[12]     *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[13]     *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[14]     *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[15]     *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v.* (continued...)

denials in the non-movant's pleadings.[16]   Likewise, "conclusory allegations" or

"unsubstantiated assertions" do not meet the non-movant's burden.[17]   Instead, the

nonmoving party must present specific facts which show "the existence of a genuine

issue concerning every essential component of its case."[18]   In the absence of any proof,

the court will not assume that the non-movant could or would prove the necessary

facts.[19]

Affidavits cannot preclude summary judgment unless they contain competent

and otherwise admissible evidence.[20]   A party's self-serving and unsupported

---

[15]     (...continued)
*City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[16]     *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[17]     *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[18]     *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[19]     *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[20]     *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[21]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[22]

## III.   ANALYSIS

Both of CRES's summary judgment motions argue that Philadelphia has violated the Texas Prompt Payment of Claims Act ("TPPCA"),[23] which sets requirements for timely payment of insurance claims and provides penalties for insurers who fail to comply with said requirements.   "In order for liability to attach under TPPCA, a party must establish: '(1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of [Chapter 542] with respect to the claim.'"[24]

---

[21]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[22]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

[23]   TEX. INS. CODE §§ 542.051-542.061.

[24]   *Salinas v. State Farm Lloyds*, 267 F. App'x 381, 388 (5th Cir. 2008) (quoting *Allstate* (continued...)

CRES brings one Motion regarding the Fountains property and one regarding the Towers property.  For both Motions, the first two elements of proof are not in dispute.  CRES has claims under its Policy with Philadelphia and, although the total amounts owed under the Policy remain hotly disputed, CRES is seeking summary judgment for TPPCA penalty interest *only* on amounts for which Philadelphia has conceded liability.

The third requirement for liability under the TPPCA is that the insurer has failed to follow one or more sections of Chapter 542 with respect to the insured's claim.[25]  Multiple sections of Chapter 542 are relevant to CRES's motions.  Section 542.055 requires that, not later than the fifteenth day after the insurer receives notice of a claim, the insurer "shall request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant."[26] Section 542.056 further requires that, if enumerated exceptions do not apply, the insurer must notify a claimant of the acceptance or rejection of a claim "not later than the 15th business day after the date the insurer receives all items, statements, and

[24]      (...continued)
*Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001)) (emphasis omitted).

[25]      *Id*. at 388.

[26]      TEX. INS. CODE § 542.055(a)(3).

forms required by the insurer to secure final proof of loss,"[27] and then must pay

accepted claims not later than the fifth business day after notification of acceptance.[28]

Under Section 542.058, an insurer is liable for damages if it delays payment for

more than sixty days, or seventy-five days for certain disasters such as Hurricane Ike,

"after receiving all items, statements, and forms reasonably requested and required

under Section 542.055."[29]  The penalty for an insurer who does not comply with the

Act's provisions is "interest on the amount of the claim at the rate of 18 percent a

year . . . together with reasonable attorney's fees."[30]

Finally, the TPPCA provides that its provisions "shall be liberally construed to

promote the prompt payment of insurance claims."[31]

A.      **Fountains Motion**

CRES's Motion for Partial Summary Judgment [Doc. # 100] ("Fountains

Motion") concerns two claims for the Fountains property.  CRES made these claims

---

[27]    *Id*. § 542.056(a).  If an insurer needs additional time, it must notify the claimant and,
not later than the forty-fifth day after such notice is provided to claimant, the insurer
must accept or reject the claim.  *Id*. § 542.056(d).

[28]    *Id*. § 542.057.

[29]    *Id*. § 542.058(a), § 542.059(b).  The parties agree that the 75-day time period applies
in this case.

[30]    *Id*. § 542.060.

[31]    *Id*. § 542.054.

on behalf of Fountains' legal owner, ELP Simon, Ltd.  The first claim was made by email submission on November 26, 2008, and was for $18,572.10 in business income and extra expense damages.[32]  The second claim was for $19,509.90 in business income and extra expense damages, and is contained in an email dated December 9, 2008.[33]

On September 15, 2009, in response to an order from this Court, Philadelphia issued a coverage decision as to the properties in issue.  In its coverage decision, Philadelphia represented to the Court that it owed an undisputed, outstanding balance

---

[32]   Email from J. Kubala to P. Patterson, dated November 26, 2008 (Exhibit A to Fountains Motion) (email states it encloses "rental rolls obtained from the insureds").  The same Exhibit A includes a page bates-stamped CRES001939 that is entitled "CRES Management–Rent Rolls" and lists $18,572.10 as losses for Fountains.  Philadelphia agrees that a claim for $18,572.10 was submitted on November 26, 2008.  Response to Fountains Motion, at 3.

[33]   Email from J. Palacek of CRES to J. Kubala and certain CRES personnel, dated Dec. 9, 2008 (Exhibit B to Fountains Motion) (email states that November loss for Fountains was $19,509.90).  Although the parties apparently agree that this claim was submitted on December 10, 2008, *see* Fountains Motion, at 1, Response to Fountains Motion, at 3, the email relied upon by the parties is dated December 9, 2008.  Moreover, the email appears to be distributed only to CRES personnel and Kubala (CRES's public adjuster), and not to Philadelphia or its agents.  Given the Court's rulings regarding this claim, the Court need not further address these discrepancies at this time.

of $27,153.55 as to Fountains.[34]  On October 8, 2009, Philadelphia paid $27,153.55 to CRES and Fountains.[35]

CRES maintains that, under the TPPCA requirement that payment be made seventy-five days after submission of the claim, payments from Philadelphia were due on February 9, 2009, for CRES's November 26, 2008, claim, and on February 23, 2009, for CRES's submission on December 10, 2008.  CRES argues that Philadelphia's payment of both claims on October 8, 2009, therefore was late.  CRES seeks penalty interest and attorneys' fees under the statute.

Philadelphia argues that summary judgment is inappropriate because a genuine issue of material fact exists as to when CRES submitted all requested proof of loss supporting its claims.[36]  In particular, Philadelphia contends that "CRES continued supplementing and revising its losses at least as late as February 5, 2009," and

---

[34]   Recapitulation of Undisputed Amounts by Philadelphia (Exhibit D to Towers Motion).

[35]   Check from Philadelphia in the amount of $27,153.55 paid to order of CRES, Kubala & Co., Fountains of Westchase and ELP Simon Ltd., dated October 8, 2009 (Exhibit C to Fountains Motion).

[36]   Philadelphia is not arguing that the massive scope of Hurricane Ike's destruction is an excuse under the TPPCA, and in fact the statute provides no such excuse.  Rather, the statute allows that for certain "weather-related catastrophe[s] or major natural disaster[s]," the 60-day claims-handling deadline under Section 542.058(a) is extended to 75 days.  TEX. INS. CODE § 542.059(b).  As stated above, the parties agree that the 75-day period is properly applied for Hurricane Ike.

therefore that Philadelphia does not owe penalty interest for the whole period claimed by CRES.[37]   In support, Philadelphia attaches three letters sent to CRES on December 18, 2008, January 13, 2009, and January 20, 2009, requesting additional information to adjust CRES's claims.[38]   Philadelphia also relies on CRES's revision of its November losses on January 19, 2009,[39] and its submission on February 5, 2009, of "corrected numbers" for September through December 2008 losses at one or more unspecified properties.[40]

The provisions of the TPPCA required Philadelphia to *request* from CRES "all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant," and to do so "not later than the fifteenth day after the insurer receives notice of a claim."[41]   For the November 26 claim, there is no evidence

---

[37]   Response to Fountains Motion, at 4.  Philadelphia does not propose alternate dates for accrual of interest on the late payments.

[38]   *See* Exhibit B to Response to Fountains Motion.  Each of the three letters is drafted by Kriegstein, Kim & Wright, P.C., a CPA firm retained by Philadelphia, and is addressed to John Kubala, a public adjuster retained by CRES.

[39]   Email from J. Kubala to Kriegstein, Kim & Wright, P.C., dated January 19, 2009 (Exhibit C to Response to Fountains Motion), reporting November losses of $25,170.00 for Fountains.

[40]   Email from T. Lippert of CRES to J. Kubala and other persons, dated February 5, 2009 (Exhibit D to Response to Fountains Motion), providing "corrected numbers through Dec." for unspecified property.

[41]   TEX. INS. CODE § 542.055(a)(3).

that Philadelphia made any request for additional information within the statutory fifteen-day time period.   Philadelphia did solicit additional information from CRES on three occasions,[42] but the earliest request was dated December 18, 2008, more than fifteen days after CRES submitted the claim.[43]   Under the statute's plain language, if Philadelphia had made a timely request for items, it could have obtained additional time for review of the claims, because after such timely request Philadelphia would have been obligated to make payment on accepted claims not more than seventy-five days *after receipt* of all reasonably requested items.[44]   However, this Court is bound to apply the Texas statute as enacted.[45]   The statute makes an insurer liable for delayed

---

[42]   Exhibit B to Response to Fountains Motion.

[43]   Philadelphia has not argued that the 15-day deadline under Section 542.055(a)(3) is properly extended to 30 days under Section 542.059(b) ("In the event of a weather-related catastrophe or major natural disaster, as defined by the commissioner, the claim-handling deadlines imposed under this subchapter are extended for an additional 15 days").   The Court does not decide the issue, and Philadelphia has waived the argument as to the November 26 claim.

[44]   An insurer is liable for damages if it delays payment for more than 60 days, or 75 days for certain disasters such as Hurricane Ike, "after receiving all items, statements, and forms reasonably requested and required under Section 542.055."   TEX. INS. CODE § 542.058(a), § 542.059(b).

[45]   When jurisdiction in a case is based on diversity of citizenship, the court under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), is bound to apply the substantive law of the forum state, while following federal procedural rules.   *See, e.g., Hall v. G.E. Plastic Pacific PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003).

payment, and does not expressly provide a defense in the case of the insureds'
subsequent revisions to its losses, as urged by Philadelphia.[46]

Philadelphia has submitted no evidence of a timely request for information
under Section 542.055, and without such request, penalty interest begins to accrue the

---

[46]     Philadelphia cites the Court to no authority supporting the existence of such a defense.
The TPPCA provides insurers with an opportunity to make additional requests for
information, if such requests become necessary during investigation of the claim.
TEX. INS. CODE § 542.055(b); *see Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242
S.W.3d 1, 19 (Tex. 2007); *Lee v. Catlin Specialty Ins. Co.*, 2011 WL 703624, *10
(S.D. Tex. Feb. 28, 2011) (Lake, J.) (investigator determined, after inspection of roof,
that he needed additional information (in particular, an invoice), and request was
outside 15-day period but permitted under Section 542.055(b)); *Nunn v. State Farm
Mutual Automobile Ins. Co.*, 729 F. Supp. 2d 801, 811-12 (N.D. Tex. 2010)
(Fitzwater, J.) (finding fact question as to whether insurer, who submitted a request
for additional information four days after the end of the 15-day period, "reasonably
believed" at the time of the 15-day deadline that the requested information would not
be necessary).

Philadelphia has not made any argument that the 75-day deadline in this case is
affected by application of Section 542.055(b).  Moreover, although Philadelphia's
response attaches three requests for information (dated December 18, 2008, January
13, 2009, and January 20, 2009), Philadelphia's briefing does not direct the Court to
any specific document or type of document that was necessary to adjustment of the
Fountains claim submitted on November 26.   *See Lee*, 2011 WL 703624, at * 11
(noting that insurance company had not demonstrated that the requested information
was required for its determination).  Whereas Section 542.055(a)(3) requires an
insurer to request all items that it "reasonably believes, at that time, will be required,"
Section 542.055(b) requires that the insurer's additional requests be for information
that is necessary.   TEX. INS. CODE § 542.055(b) ("An insurer may make additional
requests for information if during the investigation of the claim the additional requests
are ***necessary***.") (emphasis added).

day after seventy-five days from CRES's notice of the claim.[47]  February 9, 2009, is

seventy-five days from the November 26 submission, so penalty interest began to

accrue on February 10, 2009, through October 8, 2009, when Philadelphia paid the

undisputed amount.  Attorneys' fees shall be taxed as costs, as required by the

TPPCA,[48] in a sum to which the parties agree or to be determined at an evidentiary

hearing.

Regarding CRES's claim of December 10, 2008, for business income and extra

expense damages at Fountains, only the first of Philadelphia's three letters, dated

December 18, 2008, is within the fifteen-day period. The letter does specifically refer

to the December 10 claim, nor does it specifically refer to the Fountains property, but

instead refers to "CRES Management's business income and extra expense loss as it

pertains to their Hurricane Ike occurrence."[49]  This letter informs CRES of the "types

---

[47]     *Guideone Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 834
n.7 (Tex. App.—Ft. Worth 2008, no pet.) ("the trial court selected July 15, 2003, as
the accrual date, which was the next day after seventy-five days from the date that
[the claimant] notified [the insurer] of its claim and, in light of [the insurer's] failure
to request all items, statements, and forms from [the claimant], the latest date under
the deadlines set forth in [Chapter 542] for determining the interest penalty").  *See*
*State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 802 (Tex. 2007) ("State Farm
received Toni's claim on September 11th, so the 60-day period elapsed on November
10th").

[48]     TEX. INS. CODE § 542.060(b).

[49]     Letter from Kriegstein, Kim & Wright, P.C., to Kubala, dated December 18, 2008
(continued...)

of information and records [that] can prove helpful in evaluating claims," and provides a list "meant to be a *guide for comparison purposes* with those books and records you maintain."[50] It asks that CRES review and compare the list, and contact Philadelphia's accounting firm "to discuss the records which might be available for our evaluation."[51] It then requests records such as audited financial statements for each affected location in 2006 and 2007, federal tax returns for 2006 and 2007, listing of monthly gross rental income for each affected location in 2006-2008, and monthly profit and loss statements for each affected location in 2006-2008.

The Court holds that genuine issues of material fact prevent entry of summary judgment regarding the December 10 claim.  Although the December 18 letter proffered by Philadelphia appears to request information reasonably related to claims for hurricane damage, and thus would appear to suffice under Section 542.055(a)(3), the letter makes no specific reference to the Fountains property, nor to the claim submitted on December 10.  A fact question therefore exists as to whether Philadelphia timely requested additional information pertinent to the December 10

---

[49]        (...continued)
            (Exhibit B to Response to Fountains Motion), at 1.  The letter bears the Claim
            Number 348629.  According to the summary Philadelphia submitted to the Court on
            September 15, 2009, this claim number pertains to the properties at Fountains, Briar
            Park, and Nantucket.  *See* Exhibit D to Towers Motion.

[50]        Exhibit B to Response to Fountains Motion, at 1 (emphasis original).

[51]        *Id.*

claim.  More significantly in this case, if the December 18 letter suffices under Section 542.055(a)(3), Philadelphia would be liable for damages only if it delayed payment for more than seventy-five days "after receiving all items, statements, and forms reasonably requested and required" by the letter.[52]  CRES does not identify the date that Philadelphia received the requested items, instead arguing that the items requested in the December 18 letter were neither actually necessary nor used by Philadelphia in its final calculation of the claim.  It is true that Philadelphia did not specifically identify any evidence that was necessary to adjustment of the Fountains claim but not provided by CRES.  Philadelphia eventually adjusted and paid the Fountains claim based on the information submitted by CRES.  The applicable section of the statute, however, does not require that an insurer request items *ultimately* necessary, but rather refers to items the insurer "reasonably believes, at that time, will be required from the claimant."[53]  The date Philadelphia received the requested information cannot be determined on the current record. Although documents in the record refer to various submissions by CRES,[54] a genuine issue of material fact remains as to when requested

---

[52]     *See* TEX. INS. CODE § 542.058(a).

[53]     *Id*. § 542.055(a)(3).

[54]     Letter from Kreigstein, Kim & Wright, P.C. to J. Kubala, dated January 13, 2009 (Exhibit B to Response to Fountains Motion), at 1; Letter from Kriegstein, Kim & Wright, P.C., to A. Gardner and P. Patterson, dated February 19, 2009 (Exhibit A to Response to Fountains Motion), at 3.

documents specific to Fountains, and responsive to any timely request by Philadelphia, were produced by CRES.  Summary judgment is denied as to the December 10 claim.

### B.   Towers's Motion

In CRES's second Motion for Partial Summary Judgment [Doc. # 101] ("Towers Motion"), CRES seeks penalties under the TPPCA on an undisputed portion of claims to Philadelphia for damages incurred at the Towers of Clear Lake property. CRES bases its motion on a claim submitted on January 19, 2009, for business income losses at Towers,[55] and a claim submitted on March 3, 2009, for carport repairs at Towers.[56]  The undisputed amounts for these claims are $31,590.96 and $131,034.55, respectively, for the period September through December 2008.[57]

---

[55]   Exhibit H to Towers Motion.

[56]   Exhibit J to Towers Motion.

[57]   In the current motion, CRES claims the undisputed amount for business income losses related to Towers is $128,709.77.  This larger number in fact is the undisputed portion of business losses through July 2009, which is a longer period than that covered by the January 19 claim.  *See* Memorandum and Order [Doc. # 46], at 11 n.4.  The claim at issue here—*i.e.*, CRES's claim for business income losses submitted on January 19, 2009—made claims for losses from September through December 2008, and the undisputed losses for that period are $31,590.96.  *See id.*; Affidavit of George V. Bradshaw, Claims Examiner for Philadelphia (Exhibit L to Towers Motion), at 2. Because CRES's current motion relies on its claim submitted on January 19, 2009, the proper amount is $31,590.96.

This Court, on December 15, 2009, granted summary judgment to CRES, holding that Philadelphia is liable for delayed payment of claims on the Towers property.[58] In particular, the Court concluded that Philadelphia was liable for penalty interest of 18% on the undisputed amounts of $31,590.96 for business income losses and $131,034.55 for carport damage. The Court further held that statutory interest would be assessed for the lost business income claim beginning on April 5, 2009, and for the carport claim beginning on May 18, 2009.[59] For both claims, the Court held that interest would be assessed through the date of payment.

However, the Court further held that, at that time, a material fact question remained regarding the date of Philadelphia's payment on the Towers claims. CRES argued that payment was not made until October 8, 2009, when Philadelphia issued a check to CRES for $259,744.32 with notation on the check that it pertained to the Towers property.[60] Philadelphia disputed this point, arguing that a previous $350,000 advance payment, made to CRES in December 2008, should have been credited to the Towers claims. Philadelphia had previously instructed CRES to apply the advance payment to claims for the Sage property but, on September 15, 2009, announced that

---

[58]    Memorandum and Order, entered December 15, 2009 [Doc. # 46].

[59]    *Id*. at 11.

[60]    Exhibit K to Towers Motion.

it had made an overpayment of $216,486.31 on Sage claims, and instructed CRES to

apply the overpayment to the Towers claims.[61]  The Court's prior opinion stated that

it "[did] not decide at this juncture the propriety of the shifted payment,"[62] and

therefore that the date of payment on the Towers claims could not be determined at

that time.

In its current summary judgment motion, CRES focuses on the legal propriety

of the shifted payment.  CRES argues that the genuine issue of material fact identified

in the Court's previous order should be resolved as a matter of law in CRES's favor.

CRES urges that, because Sage and Towers are separate legal entities with different

owners, Philadelphia's payment to one legal entity cannot suffice as payment to a

different unaffiliated entity, even when the entities both use the same property

management company and are covered under the same insurance policy.  CRES

maintains that Philadelphia's payment of the Towers claims cannot be credited any

---

[61]     As explained in the Court's previous opinion, the advance payment of $350,000 in
December 2008 was initially identified by Philadelphia as being for the Briar Park
property, also managed by CRES.  In February 2009, after the parties reached a
settlement regarding the Briar Park property, Philadelphia instructed CRES to apply
the advance to the Sage property.  On September 15, 2009, when Philadelphia issued
a coverage decision for all relevant properties, as ordered by this Court, Philadelphia
stated that the advance payment to Sage actually had been an overpayment in the
amount of $216,486.31, and instructed that the overpayment amount be applied to the
Towers claims.

[62]     Memorandum and Order [Doc. # 46], at 13.

earlier than October 8, 2009, when Philadelphia issued payment with instructions that CRES apply the payment to Towers.  Philadelphia responds that because the checks were made out to CRES and CRES filed the relevant claims for benefits, Philadelphia should get credit for having made the payment for the benefit of Towers when payment was made for Sage.

CRES has the better of the arguments.  The Sage property, which is managed by CRES, is owned by Sage Street Associates, Ltd.[63]  The Towers property, also managed by CRES, is owned by Towers CL, Ltd.[64]  Each of these owners, along with CRES, is listed as a named insured under the Policy.[65]  Sage Street Associates, Ltd. and Towers CL, Ltd. are completely independent, separate, and distinct entities.[66]

Separate legal entities, even if insured under the same policy, must recover separately for their own losses.[67]  Philadelphia cites to no legal authority or provision

---

[63]   Affidavit of Teresa Lippert, CEO of CRES (Exhibit A to Towers Motion), at 1, ¶ 1.

[64]   *Id.*

[65]   Policy (Exhibit B to Towers Motion), at Named Insured Schedule, at 2-3.

[66]   Lippert Affidavit, at 1, ¶ 2.

[67]   *See* 3 COUCH ON INSURANCE § 40:15 (discussing parent companies and subsidiary corporations).  Couch states that when parents and subsidiaries "are separate entities but are insured under the same policy, each company must maintain its own action to recover for its loss, and a parent company can not recover for the losses of its subsidiaries."  *Id.* "An insurer could not treat a parent company and two subsidiaries insured under one policy as one entity in order to deny recovery where one of the
(continued...)

of the Policy that supports its position that an insurer's payment of benefits designated by the insurer as being for one property (here, Sage) can later be credited to another property (here, Towers) with the credit relating back to original date payment was made to for the previous and independent property.  Philadelphia was on notice that CRES, on behalf of the respective owners and itself as manager, had made claims for the damage to and losses from the Towers property, and separate claims for independent damage to and losses from the Sage property.[68]  The Policy itself, issued by Philadelphia, listed the properties' separate and distinct legal owners.[69] Significantly, Philadelphia repeatedly designated the $350,000 advance as a payment for the Sage losses and damage.[70]  CRES, as an agent for multiple named insured

---

[67]   (...continued)
companies suffered business loss but the other two were profitable." *Id.*

[68]   *See*, *e.g.*, Towers at Clear Lake Estimate Recap, dated Mar. 3, 2009 (Exhibit J to Towers Motion); Bradshaw Affidavit, at 1-2 (discussing Philadelphia's investigation of losses at Sage, Towers, and other insured properties); Recapitulation of Undisputed Amounts by Philadelphia, submitted September 15, 2009 (Exhibit D to Towers Motion) (listing CRES's claims for building damage and earnings losses at various insured properties, including Towers and Sage).

[69]   Policy (Exhibit B to Towers Motion), at Named Insured Schedule, at 2-3.

[70]   *See* Bradshaw Affidavit, at 1-2 (Bradshaw, the Philadelphia claims examiner assigned to CRES's claims, states that after claims regarding other properties were resolved in February 2009, Philadelphia "directed CRES to use the $350,000 advance for repairs to the Sage property"); Email from G. Bradshaw to T. Lippert, dated Mar. 13, 2009 (Exhibit E to Towers Motion), at 1 (Bradshaw states, "From the records that I have, the advanced [sic] paid of $350,000 was for the Sage location."); Email from A. Gardner, adjuster for Philadelphia, to T. Lippert, dated Feb. 24, 2009 (Exhibit F to
(continued...)

entities under the Policy, had no option but to follow Philadelphia's instructions in this regard.  Philadelphia cites no authority enabling CRES in February and March 2009 to have applied portions of this advance to needs at Towers.  The Towers owner was deprived of the use of any of Philadelphia's funds until October 8, 2009, when the insurer made payment on the claim submitted by Towers, in the amount of $259,744.32.[71]  CRES, on behalf of Towers, therefore is entitled to damages under the TPPCA through October 8, 2009, the date that funds were first paid for Towers's claims.   Philadelphia will owe 18% penalty interest on the relevant undisputed amounts of $31,590.96 for business income losses (claim submitted January 19, 2009) and $131,034.55 for carport losses (claim submitted March 3, 2009).  CRES also is entitled to attorneys' fees under the statute, in a sum to which the parties agree or to be determined at an evidentiary hearing.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, it is hereby

**ORDERED** that CRES's Motion for Partial Summary Judgment [Doc. # 100] ("Fountains Motion") is **GRANTED in part and DENIED in part**.  It is further

---

[70]     (...continued)
Towers Motion) (Gardner states, "I was advised that [Philadelphia] issued you an advance of $350,000 against Sage.").

[71]     Exhibit K to Towers Motion.

ORDERED that CRES's Motion for Partial Summary Judgment [Doc. # 101] ("Towers Motion") is **GRANTED in part**. It is further

ORDERED that, if the parties do not reach agreement as to the amount of penalty interest and attorneys' fees due to CRES in accordance with this opinion, the Court will hold an evidentiary hearing at a date and time to be set by future order to quantify the amounts due.

SIGNED at Houston, Texas, this **22nd** day of **March, 2011**.

Nancy F. Atlas
United States District Judge